UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **MOHAMED BIN MOHAMED MANA SALEH**, <br><br> *Plaintiff,* <br><br> v. <br><br> **ALEJANDRO MAYORKAS**, Secretary of the Department of Homeland Security, *et al.*, <br><br> *Defendants*. | Case No. 1:23-cv-409-RCL |

## MEMORANDUM OPINION

Plaintiff Mohamed Bin Mohamed Mana Saleh challenges the denial by U.S. Citizenship and Immigration Services (USCIS) of his Form I-130 petitions on behalf of his wife and minor child in Yemen. He also raises claims under the Freedom of Information Act. Defendants have moved to dismiss his FOIA claims. And they ask the Court to transfer the remaining claims to Saleh's home district, the Western District of Louisiana, or to dismiss those claims for improper venue. Saleh has moved for leave to file an amended complaint to reflect USCIS's new denial of an I-130 petition on behalf of his child.

As Saleh has conceded that he failed to exhaust the administrative appeals for his FOIA claims, the Court will **GRANT** defendants' motion to dismiss the FOIA claims for failure to state a claim. And it will **GRANT** defendants' motion to transfer Saleh's remaining claims to the Western District of Louisiana, since this case could have been brought in that district and the relevant public and private interests favor transfer. Since the Court will transfer the non-FOIA claims, defendants' motion to dismiss as to those claims is **DENIED WITHOUT PREJUDICE AS MOOT**. Finally, the Court will let the transferee court decide whether Saleh may amend his complaint.

1

## I. BACKGROUND

### A. Statutory and Regulatory Background

Immediate relatives of U.S. citizens, including spouses and children, receive certain preferential treatment under the Immigration and Nationality Act. *See, e.g.*, 8 U.S.C. § 1151(b)(2)(A)(i) (providing that immigration of immediate relatives is not subject to numerical limitations). As relevant here, a U.S. citizen may file a Form I-130 petition with USCIS to classify the petitioner's foreign national spouse or child as an immediate relative to allow the beneficiary to immigrate to the United States. *See* 8 U.S.C. § 1154(a)(1)(A)(i); 8 C.F.R. §§ 204.1(a)(1), 204.2.

### B. Factual and Procedural Background

Saleh is a United States citizen, naturalized in 2019. Compl. ¶¶ 78, 89, ECF No. 1.[1] He resides in Monroe, Louisiana, *id.* at 1, which is in the Western District of Louisiana. In 2010, he married Samra Ali Kassem under Yemeni law; the following year, she gave birth to their child, F.M.M.S., in Yemen. *Id.* ¶¶ 79–80, 281. In 2017, Saleh filed one I-130 petition on behalf of his wife and another on behalf of his child. *Id.* ¶ 81. Saleh interviewed with USCIS and provided an affidavit and supporting documentary evidence concerning his residency and relationship with Kassem and F.M.M.S. *Id.* ¶ 88. Nonetheless, in late 2019 USCIS denied both petitions on the basis that Saleh failed to demonstrate a bona fide relationship with Kassem and did not show that he is the father of F.M.M.S. *Id.* ¶¶ 90–91. In connection with each of the denied petitions, Saleh submitted FOIA requests to USCIS. The agency denied the FOIA requests concerning F.M.M.S. but disclosed certain responsive records relating to Saleh and Kassem. *Id.* ¶¶ 93–99. Saleh does not allege that he pursued any administrative appeals of the FOIA determinations.

---

[1] At this stage, the Court accepts as true Saleh's well-pleaded factual allegations.

Saleh initiated this civil action in February, 2023. *See* Compl. He named as defendants: Alejandro Mayorkas, Secretary of the Department of Homeland Security; Ur Mendoza Jaddou, Acting Director of U.S. Citizenship and Immigration Services; Stanley W. Crockett, Louisiana-New Orleans Field Office Director of USCIS; Cindy Gomez, Louisiana-New Orleans District Director of USCIS; USCIS; the Department of Homeland Security; and the Department of State. *Id.* at 1–2. Saleh alleged that USCIS's denial of his I-130 Petitions violated the Administrative Procedure Act, *id.* ¶¶ 243–271, and deprived him of his Fifth Amendment right to procedural due process, *id.* ¶¶ 272–284. He also alleged that USCIS had violated the Fifth Amendment by denying him equal protection of the law through its use of separate procedures to adjudicate his I-130 petitions based on his Yemeni national origin. *Id.* ¶¶ 285–300. Finally, he raised several FOIA claims stemming from his requests for records. *Id.* ¶¶ 52, 301–320.

Defendants moved for the Court to dismiss the FOIA claims for failure to exhaust administrative appeals and to either transfer the remaining claims to the Western District of Louisiana under 28 U.S.C. § 1404(a) or to dismiss those claims for improper venue and failure to state a claim. MTD, ECF No. 16. Saleh filed an opposition, Opp'n to MTD, ECF No. 23, and defendants filed a reply, Defs.' Reply, ECF No. 27. Saleh also moved for leave to file an amended complaint, adding challenges to the new denial of his I-130 petition on behalf of F.M.M.S. but dropping his FOIA claims. Mot. for Leave to File Am. Compl., ECF No. 24. Defendants filed an opposition to this motion, Defs.' Opp'n to Mot. for Leave to File, ECF No. 28, and Saleh filed a reply, Pl.'s Reply, ECF No. 31.

These motions are now ripe for review.

## II. LEGAL STANDARDS

### A. Motion to Dismiss for Failure to State a Claim Under Fed. R. Civ. P. 12(b)(6)

To survive a Rule 12(b)(6) motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *accord Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible when the pleaded factual content "allows the court to draw the reasonable inference that defendant is liable for the misconduct alleged." *Id.* at 678. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* A pleading must offer more than "labels and conclusions" or a "formulaic recitation of the elements of a cause of action." *Id.* (quoting *Twombly*, 550 U.S. at 555). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*

### B. Transfer Under 28 U.S.C. § 1404(a)

"For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought . . . ." 28 U.S.C. § 1404(a). "Section 1404(a) is intended to place discretion in the district court to adjudicate motions for transfer according to an 'individualized, case-by-case consideration of convenience and fairness.'" *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988) (quoting *Van Dusen v. Barrack*, 376 U.S. 612, 622 (1964)). The movant "bears the burden of establishing that the transfer of this action is proper." *Greater Yellowstone Coal. v. Bosworth*, 180 F. Supp. 2d 124, 127 (D.D.C. 2001).

"Deciding a § 1404 motion to transfer is like dancing a Texas two-step: First, could the suit have been brought in the transferee court? And second, should the suit be brought in the transferee

4

court?" *Gyau v. Sessions*, No. 18-cv-407, 2018 WL 4964502, at *1 (D.D.C. Oct. 15, 2018) (Lamberth, J.) (citing *Van Dusen*, 376 U.S. at 616–43).

The answer to the first question turns on the general venue statute, 28 U.S.C. § 1391. "Under § 1391(e), a suit against a United States officer or employee can be brought in any district where a defendant resides, where the underlying claim arose, or—if no real property is involved—where the plaintiff resides." *Gyau*, 2018 WL 4964502, at *1. "Federal defendants reside 'where the[ir] official duties are performed and not the[ir] personal residence.'" *Id.* (quoting *Lamont v. Haig*, 590 F.2d 1124, 1128 n.19 (D.C. Cir. 1978)).

The second question "calls on district courts to weigh in the balance a number of case-specific factors." *Stewart Org.*, 487 U.S. at 29. These factors involve both public and private interests. The public interests include "the transferee court's familiarity with the governing laws, each court's relative congestion, and the local interest in resolving the controversy." *Gyau*, 2018 WL 4964502, at *1 (citing *Elemary v. Philipp Holzmann A.G.*, 533 F. Supp. 2d 144, 149–50 (D.D.C. 2008) and *Trout Unlimited v. U.S. Dep't of Agric.*, 944 F. Supp. 13, 16 (D.D.C. 1996)). The private interests include "the plaintiff's preferred forum, the defendant's preferred forum, where the claim arose, and the convenience to the parties, to the witnesses, and to the evidence." *Id.* (citing *Elemary*, 533 F. Supp. 2d at 149–50 and *Trout Unlimited*, 944 F. Supp. at 16).

### III. DISCUSSION

To begin with, the Court will dismiss Saleh's FOIA claims because he has conceded that he failed to exhaust his administrative appeals. Next, it will transfer his remaining claims to the Western District of Louisiana because this suit could have been brought there and the relevant public and private interests weigh in favor of transfer. As the Court is transferring Saleh's surviving claims, it will decline to dismiss the case for improper venue and will leave it to the transferee court to decide whether he may amend his complaint.

### A. The Court Will Dismiss Plaintiff's FOIA Claims

Saleh has conceded that he failed to exhaust his administrative appeals. He has therefore failed to plausibly allege his FOIA claims. For that reason, the Court will dismiss Counts Five through Eight.

"As a general matter, a FOIA requester must exhaust administrative appeal remedies before seeking judicial redress." *Machado Amadis v. United States Dep't of State*, 971 F.3d 364, 372 (D.C. Cir. 2020) (quoting *CREW v. FEC*, 711 F.3d 180, 182 (D.C. Cir. 2013)). Defendants argue that Saleh did not plausibly allege that he exhausted his administrative remedies because although he alleged that USCIS responded to his FOIA requests, he did not allege that he then pursued administrative appeals. MTD 3–4; *see also* Compl. ¶¶ 93–99 (alleging that USCIS issued three FOIA denial letters and that at least one letter suggesting Saleh file an appeal, but not alleging that Saleh filed any appeals); 5 U.S.C. § 552(a)(6)(A)(i)(III)(aa) (providing that in the case of an adverse determination, the agency shall notify the requesting person of their right to appeal to the head of the agency).[2]

In his opposition to defendants' motion, Saleh opted not to respond to this argument. *See* Pl.'s Opp'n. "It is well-understood that 'if a party files an opposition to a motion and therein addresses only some of the movant's arguments, the court may treat the unaddressed arguments as conceded.'" *Brett v. Brennan*, 404 F. Supp. 3d 52, 59 (D.D.C. 2019) (quoting *Wannall v. Honeywell, Inc.*, 775 F.3d 425, 428 (D.C. Cir. 2014)); *see also* LCvR 7(b) (providing that if an opposition "memorandum is not filed within the prescribed time, the Court may treat the motion as conceded"). By ignoring defendants' exhaustion argument, Saleh conceded that his FOIA

---

[2] Later in the Complaint, Saleh lists the elements for one of his FOIA counts and states that he "has exhausted the applicable administrative remedies with respect to his FOIA requests." Compl. ¶ 314. But this is a paradigmatic example of a "[t]hreadbare recital[] of the elements of a cause of action, supported by mere conclusory statements" that cannot suffice to survive a motion to dismiss. *See Iqbal*, 556 U.S. 678.

claims should be dismissed. His concession is underscored by his omission of the FOIA counts from his proposed amended complaint. *See* Am. Compl., Ex. 1 to Mot. for Leave to File, ECF No. 24-1.

Under these circumstances, the Court will dismiss Saleh's FOIA claims.

### B. The Court Will Transfer This Case to the Western District of Louisiana

Since this action might have been brought in the Western District of Louisiana and the relevant public and private factors favor transfer to that district, the Court will order such transfer.[3]

As a preliminary matter, under 28 U.S.C. § 1391(e) venue would be proper in the Western District of Louisiana because the plaintiff resides there. *See* Compl. 1. Next, the relevant public and private factors overall favor transfer to that district.

First, the public interests implicated by transfer are either neutral or support transferring this case. The first two factors are a wash. This case concerns federal law, with which this district and the proposed transferee district are equally familiar. *See W. Watersheds Project v. Pool*, 942 F. Supp. 2d 93, 101 (D.D.C. 2013) ("Judges in both districts are presumed to be equally familiar with the federal laws governing this dispute, and thus this factor is not germane since no state law claims are at issue."). And the parties have proffered no clear evidence that the proposed transferee district is more or less congested than this district.

But the final factor favors transfer. "[C]ourts have 'a local interest in having localized controversies decided at home,' . . . , an interest which extends 'to controversies requiring judicial review of an administrative decision.'" *Gyau*, 2018 WL 4964502, at *2 (first quoting *Adams v. Bell*, 711 F.2d 161, 167 (D.C. Cir. 1983) and then quoting *Sierra Club v. Flowers*, 276 F. Supp. 2d

---

[3] In the alternative, defendants have moved to dismiss Saleh's claims for improper venue under Fed. R. Civ. P. 12(b)(3). *See* MTD 13–17. But since the Court will transfer this case, it need not reach that issue, as defendants concede. *See id.* at 13. Instead, defendants' motion to dismiss as to Saleh's non-FOIA claims will be denied without prejudice as moot.

62, 70 (D.D.C. 2003). This case is mostly local to Louisiana, not the District of Columbia. "To determine whether a controversy is local in nature, courts consider a wide variety of factors, including: where the challenged decision was made; whether the decision directly affected the citizens of the transferee state; the location of the controversy, whether the issue involved federal constitutional issues rather than local property laws or statutes; whether the controversy involved issues of state law, whether the controversy has some national significance; and whether there was personal involvement by a District of Columbia official." *Bourdon v. United States Dep't of Homeland Sec.*, 235 F. Supp. 3d 298, 308 (D.D.C. 2017) (internal quotation and citation omitted). Here, the controversy involves question of federal law and the U.S. Constitution. And it is arguably of national significance because Saleh alleges discrimination against Yemeni-Americans writ large, not just himself. *See* Compl. ¶ 5. But on balance, this case is local to Louisiana. The challenged decision was made at the USCIS Service Center in New Orleans (albeit in the Eastern District of Louisiana). *See id.* ¶¶ 76–77, 136–37. The decision directly affected a citizen of the transferee state, namely Saleh. And Saleh has not alleged any personal involvement by an official in the District of Columbia. The public interest in having local controversies adjudicated locally thus points toward transfer.

      Transfer is also supported by the private interest factors.

      First, "[a]lthough the 'plaintiff's choice of forum is ordinarily entitled to deference,' that choice is conferred considerably less deference when," as in Saleh's suit, "it is not the plaintiff's home forum, has few factual ties to the case at hand, and defendants seek to transfer to plaintiff's home forum." *Bourdon*, 235 F. Supp. 3d at 305 (internal quotation and citation omitted); *Aftab v. Gonzalez*, 597 F. Supp. 2d 76, 80–81 (D.D.C. 2009) (noting that plaintiff's "choice of this district

as a forum commands diminished deference" when "the claim involves identifiable relevant events occurring in the transferee district and virtually none in this district").

Second, the defendants' choice of forum is of course the proposed transferee district.

Third, Saleh's claims mostly arose in Louisiana rather than the District of Columbia. The essence of his suit is USCIS's denial of his I-130 petitions. Saleh does not allege that USCIS's decisions were made in the District of Columbia. Instead, he casts the decisions in this case as downstream of decisions previously made in the District of Columbia. *See* Pl.'s Opp'n 2–5. But even if Saleh were ultimately harmed by policies crafted in the capital, the events that directly led to this suit occurred at the USCIS Service Center. For the most part, at least, his claims did not arise in the District of Columbia.

Saleh fails in his attempt to shoehorn his case into the District of Columbia by emphasizing the role of the State Department. The State Department, unlike USCIS, is based in D.C. *See* Compl. at 1–2. So, Saleh contends that the State Department is "a key Defendant in Plaintiff's constitutional challenges" to USCIS's denial of his I-130 petitions. Pl.'s Opp'n 2. He alleges that he is the victim of a "facially discriminatory Yemeni I-130 adjudication policy." Compl. ¶¶ 278–79, 296–97. But the only policy Saleh actually attributes to the Department of State is USCIS's requirement that Yemeni-American petitioners provide names of family members in an Affidavit of Residency, as he traces this policy to a 2009 email from the Consular Section Chief of the U.S. Embassy in Sana'a, Yemen. Compl. ¶¶ 15–18.[4] Saleh's emphasis on the State Department is

---

[4] In his opposition, Saleh also blames the Department of State for USCIS's failure to request DNA evidence to establish F.M.M.S.'s paternity. Opp'n 2–5. However, his Complaint alleges that it was USCIS, not the Department of State, that "failed to request DNA testing upon receipt of the I-130 petition or at any other subsequent stage in the adjudication process." Compl. ¶ 26; *see also id.* ¶¶ 135–36 (alleging that "USCIS routinely fail to request DNA evidence until years after receipt of the I-130 Petition"); *id.* ¶ 178 (alleging that Yemeni adjudication policies were created by USCIS and "developed based on findings made by USCIS in consultation with the Department of State's former Sana'a Embassy"). In short, Saleh's attribution of responsibility for the failure to request DNA testing to the Department of State rather than USCIS has no basis in his Complaint. Saleh cannot manufacture a venue argument by

meant to show that his claims truly arose in the District of Columbia. But "[c]ourts in this circuit must examine challenges to personal jurisdiction and venue carefully to guard against the danger that a plaintiff might manufacture venue in the District of Columbia" because "[b]y naming high government officials as defendants, a plaintiff could bring a suit here that properly should be pursued elsewhere." *Cameron v. Thornburgh*, 983 F.2d 253, 256 (D.C. Cir. 1993). And "the mere involvement on the part of federal agencies, or some federal officials who are located in Washington, D.C. is not determinative" of venue. *Ctr. for Env't Sci., Accuracy & Reliability v. Nat'l Park Serv.*, 75 F. Supp. 3d 353, 358 (D.D.C. 2014) (internal quotation and citation omitted).

Finally, the Western District of Louisiana would be a more convenient forum for the parties (because Saleh lives there), any witnesses (since the USCIS Service Center that processed his petitions is in the same state), and the collection of evidence (for both those reasons). Even if Saleh is correct that USCIS's Affidavit of Residency requirement stems from a 2009 State Department email, that does not suggest that the District of Columbia is home to a significant number of witnesses or amount of evidence.

Since the public and private interests mostly weigh in favor of transfer, the Court will grant defendants' motion to transfer this suit.

### C. The Court Will Not Rule on Plaintiffs' Motion for Leave to Amend His Complaint

Defendants offer reasons to deny Saleh leave to amend his complaint, including that he failed to comply with Local Civil Rule 7(m) and that his amendment would be futile. Defs.' Reply 6–7. But because the Court has resolved to transfer this case, it will leave it to the transferee court to determine whether Saleh's complaint may be amended. Defs.' Reply 5–6; *see, e.g.*, *2215 Fifth*

---

using his opposition to rewrite his complaint. *See Stewart v. Kendall*, 578 F. Supp. 3d 18, 24 n.3 (D.D.C. 2022) (Lamberth, J.) ("[A] complaint may not be amended by the briefs in opposition to a motion to dismiss.") (internal citation and quotation omitted).

10

*St. Assocs.*, 148 F. Supp. 2d at 52 (noting that since the court granted "defendant's motion to transfer, the Court need not address plaintiff's Motion for Leave to File a First Amended Complaint").

## IV.   CONCLUSION

For the foregoing reasons, it is hereby

**ORDERED** that defendants' motion to dismiss as to plaintiff's claims under the Freedom of Information Act ("FOIA"), Counts Five through Eight, is **GRANTED**; and it is further

**ORDERED** that plaintiff's FOIA claims are **DISMISSED**; and it is further

**ORDERED** that judgment is entered in favor of defendants as to Counts Five, Six, Seven, and Eight; and it is further

**ORDERED** that defendants' motion to transfer is **GRANTED**; and it is further

**ORDERED** that the Clerk of the Court shall **TRANSFER** this action to the United States District Court for the Western District of Louisiana; and it is further

**ORDERED** that defendants' motion to dismiss as to the remaining counts is **DENIED WITHOUT PREJUDICE AS MOOT**, and defendants shall have leave to refile any appropriate motion to dismiss under Rule 12 within 21 days of this action being docketed with the transferee court.

Date: 7-12-24

Royce C. Lamberth
United States District Judge